## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

—————————————————————
              )
JHONY DELCID,        )
              )
        Plaintiff,  )
v.             )    Civil Action No. 11-11122-PBS
              )
AMERICAN SERVICING COMPANY,  )
              )
        Defendant.  )
—————————————————————  )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendant America's Servicing Company ("ASC"), improperly identified as American Servicing Company, submits this memorandum of law in support of its motion to dismiss Plaintiff Jhony Delcid's Complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

While it is unclear from the sprawling Complaint what legal claims Plaintiff asserts (because he does not delineate any actual claims), at a minimum, he claims in conclusory fashion that ASC violated the federal government's Home Affordable Modification Program (HAMP) by failing to provide a mortgage modification. That, however, is where Plaintiff's factual allegations end. He simply does not allege sufficient facts to demonstrate a plausible entitlement to relief, making this case a prime candidate for dismissal under Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) and its progeny. Regardless, even upon the merits of the meagerly pled facts, Plaintiff's claim fails as a matter of law, as the overwhelming majority of courts in Massachusetts and throughout the country have held that HAMP does not create a private right of action.

While Plaintiff does not assert any actual numbered claims or specific counts, he does mix in amongst his HAMP allegations references to "assignment issues under Ibanez," and ASC's alleged "failure to act in good faith and a commercially reasonable manner" in hopes that the mere mentioning of these topics will garner him credibility with this Court. Plaintiff, however, does not provide sufficient (and in some cases, any) factual allegations to support his passing references. Instead, Plaintiff simply states that there are assignment "issues" or that ASC failed to act in "good faith" without providing any plausible factual basis for his legal conclusions. In some instances, Plaintiff's own allegations reveal that his claims are legally unsustainable. In other instances, Plaintiff has failed to plead facts demonstrating a plausible entitlement to relief. For each of these reasons, which are set forth in more detail herein, this Court should dismiss Plaintiff's Complaint in its entirety.

## REVELANT FACTUAL BACKGROUND[1]

Plaintiff owns, and resides in, real property located at 1666 N Shore Road in Revere, Massachusetts (the "Property"). Compl. ¶1. On December 15, 2004, Plaintiff obtained a mortgage loan in the principal amount of $268,000 secured by a mortgage on the Property. Compl. ¶5, 6. Plaintiff defaulted on the loan and foreclosure proceedings were initiated. Compl. ¶7. There is no allegation that Plaintiff applied for a HAMP modification or that the Plaintiff submitted all the required HAMP modification materials. Compl. generally. Plaintiff makes no other factual allegations regarding a HAMP application attempt or ASC's consideration of a HAMP modification application, except to allege that he "demanded" a modification by letter of counsel. Compl. ¶13, 14. He does not even allege that he qualified for a modification. Compl. generally.

---

[1] As it must, ASC accepts Plaintiff's well-pled facts as true for the purposes of this motion only.

## THE RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a Complaint that fails to state a claim upon which relief can be granted.  The United States Supreme Court clarified and, in effect, heightened Rule 8 pleading requirements when it expressly rejected the oft-cited "no set of facts" language of Conley v. Gibson, 355 U.S. 41 (1957).  See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007) ("The [no set of facts] phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard").  In Ashcroft v. Iqbal, the Supreme Court confirmed that the Twombly pleading standard applied to all civil actions.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (U.S. 2009).  Now, in order to survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face."  Id. at 1949.  In short, Rule 8 now has teeth, and Plaintiff's allegations against ASC fall markedly short of demonstrating a plausible entitlement to relief.

Generally, on a motion to dismiss, the Court must accept all factual allegations in the complaint as true.  See Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  However, in deciding a motion to dismiss, "those 'facts' which have since been conclusively contradicted by plaintiffs' concessions or otherwise" are not accepted as true. Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987); see also Snowden v. Hughes, 321 U.S. 1, 10, (1944); Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009); Bose BV v. Zavala, slip copy, 2010 WL 2733621, *1 (D.Mass. Jul 08, 2010).

Given these legal guideposts, it is clear that Plaintiff has done little more than assert legal conclusions without providing a factual basis for the same.  Other than alleging that he demanded a loan modification that he did not get, Plaintiff does not allege any actual facts. Plaintiff does not allege when he applied for a modification; how many times he applied for a

modification; what financial materials he provided to the ASC; what ASC's response was; whether his application was approved or denied; when it was approved or denied; or why his application was approved or denied.  Indeed, stripped of its conclusory allegations, there is simply nothing to Plaintiff's Complaint other than that he did not get a modification and that he is facing foreclosure because he did not pay his mortgage.  Plaintiff simply has not done enough under Iqbal and Twombly to survive dismissal.  Moreover, even when considered on the scarce facts alleged, his Complaint should also be dismissed because it fails to state any facts that, as a matter of law, could support a cause of action.

## ARGUMENT & AUTHORITIES

This court should dismiss Plaintiff's Complaint for failure to state a claim because Plaintiff has failed to plead facts sufficient to show a plausible entitlement to relief. Regardless, even if sufficiently pled, Plaintiff's Complaint still fails as a matter of law, because there is no private right of action under HAMP.  Similarly, Plaintiff's passing references to other theories are inadequately pled and fail as a matter of law.

## I.     HAMP DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION.

### A.     HAMP Background

HAMP is neither statutory nor regulatory.  It is a program created by the United States Treasury in response to, and in conjunction with, the Emergency Economic Stabilization Act of 2008 (the "Act").  See 12 U.S.C. § 5219.[2]  The Act grants authority to the Secretary of

---

[2] Section 5219 provides:

    (a) Residential mortgage loan servicing standards.

    (1) To the extent that the Secretary acquires mortgages, mortgage backed securities, and other assets secured by residential real estate, including multifamily housing, the Secretary shall implement a plan that seeks to maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages, considering net present value

Treasury to acquire troubled assets such as mortgages and mortgage backed securities and to implement a plan to "maximize assistance for homeowners."  The Act further provides how the Secretary "may" assist homeowners through loan modification.[3] The Act does not address the Secretary's authority with respect to mortgages that he does not hold, own, or control.   In addition, the Act notably does not explicitly or implicitly create any private rights of action for non-compliance.[4]

The congressional record illustrates Congress' intent and acknowledgement that the Act does not create any private right of action and that there is no private authority to enforce the Act's proposed modification program.  Representative Kucinich noted:

> "The central flaw of this bill is that *there are no stronger protections for homeowners and no changes in the language to ensure that the Secretary has the authority to compel mortgage servicers to modify the terms of mortgage*.   And there are no stronger regulatory changes to fix the circumstances that allowed this to happen.
>
> We should have created a mechanism for our Government to take a controlling interest in mortgage-backed securities and use our power to work out a new deal for the homeowners.  We could have done this.  We should have done this.  But we didn't …

---

to the taxpayer, to take advantage of the HOPE for Homeowners Program under section 257 of the National Housing Act [12 USCS § 1715z-23] or other available programs to minimize foreclosures. In addition, the Secretary may use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures.

[3] Section 5220 provides:

(1) In general. To the extent that the Federal property manager holds, owns, or controls mortgages, mortgage backed securities, and other assets secured by residential real estate, including multifamily housing, the Federal property manager shall implement a plan that seeks to maximize assistance for homeowners and use its authority to encourage the servicers of the underlying mortgages, and considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program under section 257 of the National Housing Act [12 USCS § 1715z-23] or other available programs to minimize foreclosures.

(2) Modifications. In the case of a residential mortgage loan, modifications made under paragraph (1) *may* include--
    (A) reduction in interest rates;
    (B) reduction of loan principal; and
    (C) other similar modifications…

[4] Nor does the Act create any actual obligations for private (non-government) held and serviced loans.

*It is not as though we had no choice but to pass the bill before us. We could have done this differently. We could have demanded language in the legislation that would have empowered the Treasury to compel mortgage servicers to rework the terms of mortgage loans so homeowners could avoid foreclosure.*"

154 Cong. Rec. H 10712, 10766 (statement of Rep. Kucinich, Oct. 3, 2008) (emphasis added). Clearly, the above language shows that Congress chose not to include any mandates or requirements for servicers. The entire program is voluntary and without any private enforcement mechanism from the Act.

Purportedly based on its authority derived from the Act, the United States Treasury created HAMP. See, HAMP Supplemental Directive 09-01, Page 1. President Obama announced the new "Homeowner Affordability and Stability Plan" on February 18, 2009 in a purported attempt to help millions restructure their mortgages. Id. The Treasury then sought to apply its newly adopted HAMP not just to those mortgages which it held, owned, or controlled as prescribed by the Act, but also to those privately owned and serviced mortgages where it had no ownership or authority. The Treasury did so by presenting a so-called "Commitment to Purchase Financial Instrument and Servicer Participation Agreement" to loan servicers. Despite its name, the Secretary did not actually purchase, hold, or control any interest in the privately owned and serviced mortgages that it sought to influence.

As an incentive to entice loan servicers such as ASC to voluntarily enroll in the HAMP servicer participation agreement, the Treasury proposed to compensate servicers for each loan that they successfully modified. While the compensation terms are not included in the servicer participation agreement, they are set forth in the HAMP Directives. See HAMP Supplemental Directive 09-01 (providing $1,000 for completed modifications). The servicer is not compensated for loans that it is unable to modify regardless of the reason for the unsuccessful

modification, and the servicer is also not compensated if the borrower fails to complete the initial trial loan modification (even though the servicer complied with the program). Since HAMP's inception in early 2009, the Treasury has issued at least 15 supplemental directives consisting of hundreds of pages explaining the intricacies of HAMP including the net present value test, the complicated debt-to-income modification waterfall, and stringent reporting requirements.[5] None of these directives, however, has ever suggested that any private right of action exists under the terms of the program or any supplemental directive. Nor has any directive ever required investor participation. In fact, servicers do not have to follow HAMP when their loan investor guidelines prohibit it.

> **B.    Courts have Repeatedly Ruled that No Private Cause of Action Exists Under HAMP.**

Consistent with the legislative intent, Massachusetts courts and courts throughout the country have held that HAMP does not create a private right of action. See e.g., Kozaryn v. Ocwen Loan Servicing, LLC, Docket No. 10-11510-NMG (D. Mass. May 17, 2011) (noting consensus view that HAMP does not create private right of action); Brown v. Bank of Am. Corp., 2011 U.S. Dist. LEXIS 36235, *10-12 (D. Mass. Mar. 31, 2011) (ruling no private right of action under HAMP and HAMP does not create a cognizable duty for which a negligence claim can be brought); Durmic v. J.P. Morgan Chase Bank, NA, 2010 U.S. Dist. LEXIS 124603, *8, n.2 (D. Mass. Nov. 24, 2010) (noting "the court agrees ... that HAMP explicitly precludes any private right of action); Ording v. BAC Home Loans Servicing, LP, 2010 U.S. Dist. LEXIS 139317, *19-20 (D. Mass. Jan. 10, 2010) (ruling HAMP does not

---

[5] All of the Directives are available online at: https://www.hmpadmin.com/portal/programs/directives.html#3. On September 22, 2010, the former Supplemental Directives were superseded by the Making Homes Affordable Program Handbook for Servicers of Non-GSE Mortgages, available online at https://www.hmpadmin.com/portal/programs/hamp/servicer.html.

create a private right of action); <u>Hart v. Countrywide Home Loans, Inc.</u>, 2010 WL 3272623 at 5 (E. D. Mich. Aug. 19, 2010) (entering summary judgment for defendant bank, holding HAMP does not compel modification and statute does not create private right of action); <u>Duggar v. Bank of America/Countrywide Loans</u>, 2010 WL 3258383 at *2 (E.D. Mo. August 16, 2010) (holding no private cause of action under HAMP, TARP, or the Emergency Economic Stabilization Act of 2008); <u>Hoffman v. Bank of America, N.A.</u>, 2010 WL 2635773 at *5 (N.D. Cal. June 30, 2010) (holding no private right of action to enforce HAMP); <u>Robinson v. ASC Bank, N.A.</u>, 2010 WL 2534192 at *7 (D. Ariz. June 18, 2010) (holding no private cause of action under TARP); <u>Thoreau de la Salle v. America's Wholesale Lender</u>, 2010 U.S. Dist. LEXIS 36319 (E.D. Cal. Apr. 13, 2010) ("To the extent that plaintiff is trying to predicate her due process claims on violations of the Home Affordable Modification Act (HAMP), the Troubled Asset Relief Program (TARP), or the National Housing Act ("NHA"), there is no private right of action afforded under those statutes nor do they create a protected property interest"); <u>Aleem v. Bank of America</u>, 2010 U.S. Dist. LEXIS 11944, *9 (C.D. Cal. Feb. 9, 2010) ("Though Plaintiffs mention the National Housing Act and the HAMP, they fail to allege any elements related to violations of these statutes, nor do they provide a basis for concluding that a private right of action exists under these statutes."); <u>Williams v. Geithner</u>, 2009 U.S. Dist. LEXIS 104096 (D. Minn. Nov. 9, 2009) (finding HAMP did not create a protected property interest and noting "[t]he loan modifications are not an entitlement, but are linked to decisions that result in profits to taxpayers.  Congress did not intend to mandate loan modifications."); <u>Pantoja v. Countrywide Home Loans, Inc.</u>, 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009) ("...but nowhere in the judicial review section is there any mention of a right

of action against non-governmental entities.   Thus, the Court finds that there is no express private right of action against TARP fund recipients.").

Nothing in the enabling legislation, the HAMP guidelines, or the interpreting case law establishes a private right of action under HAMP. Since no private right of action exists, Plaintiff's complaint fails as a matter of law and should be dismissed.

### C.   Plaintiff Lacks Standing to Assert a Breach of the SPA Between Defendant and the Federal Government Because Plaintiff Is Not An Intended Beneficiary.

Knowing that no private of right of action exists under HAMP, Plaintiff alleges that by failing to offer Plaintiff permanent HAMP modification, ASC breached its duties under the Servicer Participation Agreement ("SPA"). (Compl. ¶ 17.)  Notably, Plaintiff does not allege that he was a third-party beneficiary to the SPA, and assuming *arguendo*, that Plaintiff seeks third-party beneficiary status by implication, Plaintiff lacks standing to assert such a claim because he is, at most, an incidental beneficiary to the SPA and does not have enforceable rights under the contract.   See McKensi v. Bank of Am., No. 09-11940-JGD, 2010 WL 3781841, at *5 (D. Mass. Sept. 22, 2010); Hoffman, 2010 WL 2635773, at *4-5; Marks, 2010 WL 2572988, at *4-5; Zendejas, 2010 WL 2490975, at *3; Benito v. Indymac Mortgage Servs., No. 2:09-CV-001218, 2010 WL 2130648, at *7 (D. Nev. May 21, 2010); Villa v. Wells Fargo Bank, N.A., No. 10CV81, 2010 WL 935680, at *3 (S.D. Cal. Mar. 15, 2010); Escobedo v. Countrywide Home Loans, Inc., No. 09cv1557, 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009).

In Escobedo, the plaintiff asserted a similar breach of contract claim for an alleged breach of the SPA.  2009 WL 4981618, at *2.   The court noted that, "[p]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not

9

enforce the contract absent a clear intent to the contrary." Id.  In order to permit individual enforcement, the contract must have included an expressed or implied intention to benefit the third party.  That agreement, like the one at issue in this case, "did not grant qualified borrowers the right to enforce the Agreement" because it expressly stated that the benefits only inured to the "parties to the Agreement and their permitted successors-in-interest." Id.  In addition, the court noted that a "borrower would not be reasonable in relying on the Agreement as manifesting an intention to confer a right on him or her because the Agreement does not require that [Lender] modify eligible loans." Id. at *3.  The courts in Hoffman, Marks, Zendejas, Benito, and Villa reached an identical conclusion upon the same reasoning.

In this case, the lack of expressed or implied intent that Plaintiff be afforded third-party beneficiary status belies Plaintiff's breach of contract theory under the SPA. The SPA expressly provides that the benefits only inure to the parties to the agreement.  The SPA is also consistent with the enabling statutory scheme, which also does not provide a private cause of action.  Plaintiff is presumed to be an incidental beneficiary unless some other intent is clearly indicated, which none is.  Accordingly, Plaintiff is, at best, an incidental beneficiary, and therefore he lacks standing to assert a third-party beneficiary breach of contract claim.

## II.   PLAINTIFF'S FLEETING MENTIONS OF OTHER THEORIES OF RECOVERY FAIL BECAUSE THEY HAVE NOT BEEN SUFFICIENTLY PLED AND BECAUSE THEY FAIL AS A MATTER OF LAW.

Without any detail and without asserting any separately labeled or identified claims, Plaintiff briefly references other potential theories of recovery in his allegations.   In a conclusory fashion, he asserts that the assignee did not receive a valid assignment of the note and mortgage.  These bare-bones, conclusory allegations are precisely the types of claims that do not survive Twombly and Iqbal scrutiny.  In fact, several of these claims have no basis

whatsoever and if any prior investigation of the claims had occurred, they should not have been asserted.

### A.  Plaintiff's <u>Ibanez</u> Allegations Fail.

In an attempt to latch on to a hot consumer finance issue, but without considering its applicability to his case, Plaintiff references the Massachusetts Supreme Judicial Court's holding in <u>U.S. Bank National Assoc. v. Ibanez</u>, 458 Mass. 637 (2011) to allege that Defendant lacks standing to foreclose.  The issue in <u>Ibanez</u> was whether an assignee had established its standing to foreclose for the purpose of its post-foreclosure, quiet title action. Here, there are no allegations of any assignments, let alone how any assignments are invalid. Plaintiff has not alleged any facts whatsoever regarding the holder of the mortgage or the assignment of the mortgage.  Plaintiff has merely speculated that ASC may not be the proper party to foreclose without providing any factual basis for such a legal conclusion.  Therefore, Plaintiff has simply thrown the proverbial mud against the wall in the hopes that something would stick.  The <u>Twombly</u> and <u>Iqbal</u> Courts clearly state that a Plaintiff must provide more than just labels and conclusions and must provide a plausible basis for a claim.  Plaintiff has failed to provide any factual basis for any claim under <u>Ibanez</u>, even presuming one exists.

Finally, in passing, Plaintiff also speculates, again without any factual support, that ASC is not the holder of his promissory note.  (Compl. ¶¶ 19, 29.)  Plaintiff, however, overlooks the fact that the veracity of this allegation is irrelevant as holding the note is not a requirement for foreclosure.  <u>See</u> <u>Aliberti v. GMAC Mortg., LLC</u>, slip opinion, --- F.Supp.2d ----, 2011 WL 1595442, *6 (D.Mass. Apr. 28, 2011) ("Plaintiffs incorrectly assert that the mortgagee must also hold the note in order to foreclose.");  <u>McKenna v. Wells Fargo Bank, N.A.</u>, slip opinion, 2011 WL 1100160, *2 (D.Mass. Mar 21, 2011) ("The Massachusetts

statute governing foreclosures makes no mention of note holders"); Valerio v. U.S. Bank, N.A., 716 F.Supp.2d 124, 128 (D. Mass. 2010) (denying the plaintiff's request for a preliminary injunction, in part, because it rejected the plaintiff's argument that because the defendant did not hold the note, it did not have the authority to foreclose); Adamson v. Mortgage Electronic Registration Systems, Inc., 2011 WL 1136462, *4 (Mass.Super. Mar 23, 2011) (citing Valerio with approval).  Indeed, G.L. c. 244 governs foreclosures and deals only with mortgagees. It makes no mention of note holders.   Therefore, Plaintiff's allegation, besides being of questionable basis, fails as a matter of law.

**B.     Plaintiff's Good Faith and Fair Dealing Claim Also Fails.**

It is well settled that there can be no claim for breach of the implied covenant of good faith and fair dealing if there is no contract. See Levenson v. L.M.I Realty Corp., 31 Mass. App. Ct. 127, 131 (1991).  The only contract between Plaintiff and ASC alleged is that of the note and mortgage.   Ignoring the undisputed fact that he has defaulted on his mortgage, Plaintiff alleges that ASC breached its covenant of good faith and fair dealing by refusing to modify that Plaintiff's loan.   While Plaintiff makes the conclusory allegation that ASC breached its duty to act in good faith, he does not allege through what action, conduct, or omission the breach occurred.   He also does not allege what contractual benefit he was deprived.  His theory, although not clearly pled, appears to be that ASC should have modified his loan.  Not only do his factual allegations fall woefully short, but Plaintiff has not and cannot establish a contractual or common law duty to modify non-performing loans.  There is no duty to negotiate in good faith toward a loan modification or to modify a loan.  See Schwanbeck v. Federal Mogul Corp., 31 Mass. App. Ct. 390, 396 (1991) (citing Farnsworth, Contracts § 3.26 (1982) ("In the absence of an express undertaking to 'negotiate in good faith,'

courts have been reluctant to impose a common law duty to do so.")); Carney v. Shawmut Bank, N.A., 72 Mass. App. Ct. 1117 at * 3 (Mass. App. Ct. 2008) (unpublished) (upholding summary judgment and rejecting plaintiff's claim that the bank failed to negotiate debt restructure or extensions regarding note in good faith, stating "[plaintiff] was in default. While [the bank] was free to negotiate with [plaintiff], it was under no obligation to do so, and was equally free to exercise the rights which it had acquired under the loan agreements."); Federal Nat'l Mortgage Assoc. v. Tong, 60 Mass. App. Ct. 1105 at *1 (Mass. App. Ct. 2003) (unpublished) (upholding dismissal of plaintiffs' claim that defendant bank breached duty of good faith and fair dealing by failing to engage in loan modifications or a "work out" option where loan agreement contained no such provision and parties did not "agree to agree" on modification, noting "[g]ood faith and fair dealing simply obligates each party to a contract not to act in such a way as to impair the other party's right to reap the fruits of the contract."); McKensi v. Bank of America, N.A., 2010 WL 3781841 at *5-6 (D. Mass. September 22, 2010) (no breach of obligation of good faith and fair dealing where "the claim is that the Bank sought to enforce the precise terms of the agreement, and acted according to its rights under the loan documents"); Sam v. American Home Mortgage Serv., 2010 WL 761228 at *6  (E. D. Cal. 2010) (dismissing claim where plaintiff alleged defendants breached duty of good faith and fair dealing by foreclosing on mortgage rather than seeking loan modification, noting "[a] claim for breach of the duty of good faith is a claim that a defendant deprived plaintiff of benefits reasonably expected by parties under the contract. Foreclosing upon a loan where such foreclosure is permissible by law and the terms of the loan agreement does not deprive plaintiff of any benefits reasonably expected by parties to the loan."); Rosemong Gardens Funeral Chapel-Cemetery, Inc. v. Trustmark Nat'l Bank, 330 F. Supp. 2d 801, 808 (S. D. Miss. 2004)

(dismissing plaintiff's claim alleging defendants violated duty of good faith and fair dealing by refusing to restructure plaintiff's loan, noting that a successful claim requires plaintiffs to "prove the existence of a binding contract which obligated [defendant] to reduce the payments."); see also Blue Hills Office Park v. JP Morgan Chase Bank, 477 F. Supp. 2d 366, 375 (D. Mass. 2007) (quoting Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385, 805 N.E.2d 957 (2004)) ("The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance").

In this case, there are no provisions alleged to be in the mortgage or elsewhere that require ASC to modify Plaintiff's mortgage.  Plaintiff may not invoke the implied covenant of good faith and fair dealing to create rights that do not otherwise exist under the parties' contract.  That ASC voluntarily attempted to modify the mortgage does not alter the analysis.  In short, Plaintiff's claims must fail as a matter of law because there is no contractual or common law duty to modify.  Even assuming *arguendo* that a duty existed, Plaintiff failed to plead sufficient facts that establish a violation.  Therefore, this Court should dismiss any such claims made by the Plaintiff.

## CONCLUSION

WHEREFORE, for each of the reasons stated herein, ASC requests that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted and for other such relief that the Court should deem just and reasonable.

*[Signature on Next Page]*

Respectfully submitted,
America's Servicing Company,
by its attorneys,

*/s/ Morgan Nickerson*
Jeffrey S. Patterson (BBO# 671383)
jeffrey.patterson@nelsonmullins.com
Morgan T. Nickerson (BBO# 667290)
Morgan.nickerson@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, Massachusetts 02109
p.   (617) 573-4700
f.   (617) 573-4710

Dated: June 28, 2011

## CERTIFICATE OF SERVICE

I, Morgan T. Nickerson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: June 28, 2011          */s/ Morgan T. Nickerson*
                              Morgan T. Nickerson